UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

A.S.,

                Petitioner,

    v.

JULIO HERNANDEZ, *et al.*,

                Respondents.

Case No. C26-1427-MLP

ORDER

Through counsel, Petitioner A.S. filed an amended petition for writ of habeas corpus under 28 U.S.C. § 2241, challenging his detention by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. (Dkt. # 7.) Respondents filed a timely return (dkt. # 10), along with sworn declarations from U.S. Department of Homeland Security ("DHS") Deportation Officer Rita Soraghan (dkt. # 11) ("Soraghan Decl.") and their counsel, Michelle Lambert (dkt. # 12) ("Lambert Decl."). Petitioner filed a timely traverse in response. (Dkt. # 14.)

ORDER - 1

Having considered the parties' submissions and the governing law, the Court GRANTS the amended petition (dkt. # 7) in part and orders Petitioner's release from immigration custody. Remaining claims and requests for relief are addressed below.[1]

## I.   BACKGROUND

Petitioner A.S. is a native and citizen of Mexico, who first entered the United States without inspection on or about November 15, 1996. (Soraghan Decl., ¶ 4.) On December 15, 2005, Petitioner was removed from the United States pursuant to a stipulated request for removal. (*Id.* ¶¶ 6-9; Dkt. # 7, Ex. I at 3.)

At some point after his removal, Petitioner re-entered the United States. (*See* Soraghan Decl., ¶ 10.) Petitioner asserts he has resided in the United States now for over two decades. (Dkt. # 7, ¶ 24.) He has three children who are U.S. citizens and he also supports his three-year-old granddaughter, who requires additional care. (*Id.* ¶ 25.) He has been approved by the State of Oregon to be his granddaughter's foster parent. (*Id.*, Ex. G.)

On August 21, 2023, Petitioner submitted a Violence Against Women Act ("VAWA") Application and an Application to Register Permanent Residence ("Form I-485") to the U.S. Citizenship and Immigration Services ("USCIS"). (Dkt. # 7, ¶ 27; *see id.*, Exs. C, D.) On February 22, 2024, USCIS approved, as part of his pending Form I-485, Petitioner's application for advance parole and employment authorization, which are valid until February 21, 2029. (*See id.*, Exs. E, F.) Petitioner asserts that on March 11, 2026, USCIS granted Petitioner an extension of his VAWA "*prima facie* case" classification until September 7, 2026.[2] (*Id.* ¶ 28.)

---

[1] The parties consented to proceed before the undersigned Magistrate Judge. (Dkt. # 3.)

[2] Respondents dispute whether Petitioner was granted a *prima facie* case classification. (*See* dkt. # 10 at 6.) As explained below, resolving this disputed fact is not necessary for adjudicating this petition.

ORDER - 2

On April 16, 2026, ICE arrested Petitioner while he was driving to work. (Dkt. # 7, ¶ 29; Soraghan Decl., ¶ 11.) It appears from the record that Petitioner informed ICE officers of his pending VAWA application during his April 16, 2026 arrest. (*See* Lambert Decl., ¶ 2, Ex. I at 2 of 3.) Officer Soraghan asserts that Petitioner was arrested "because of his criminal history and for being in the United States unlawfully." (Soraghan Decl., ¶ 11.) ICE issued Petitioner a Notice to Appear ("NTA"), charging him with removability under the Immigration and National Act ("INA"). (*Id.* ¶ 12.) He was thereafter transferred to the NWIPC, where he remains detained. (Dkt. # 7, ¶ 29.) Petitioner is scheduled for an immigration hearing on May 26, 2026. (Soraghan Decl., ¶ 15.)

On May 7, 2026, Petitioner filed the instant petition, alleging his arrest and detention, without notice or an individualized hearing before a neutral decisionmaker, violates his due process rights under the Fifth Amendment, the INA, the Administrative Procedures Act ("APA"), the Fourth Amendment of the U.S. Constitution, ICE's 2025 Policy Directive 11005.4 ("ICE policy directive"), and the *Accardi* doctrine. (Dkt. # 7, ¶¶ 5-7, 34-63.) He seeks release from detention or, alternatively, a bond hearing—asserting he is a bond denial class member under *Rodriguez v. Bostock*, 802 F. Supp. 3d 1297 (W.D. Wash. 2025). (*Id.* ¶¶ 9-10; *see id.* at 19-20.) He also seeks permanent injunctive relief related to any future redetention. (*Id.* at 20.)

## II.    LEGAL STANDARDS

### A.    Habeas Petitions

District courts may grant writs of habeas corpus "within their respective jurisdictions." 28 U.S.C. § 2241(a). This authority extends to challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). A petitioner may obtain relief by showing that he is "in custody in violation of the Constitution or laws or treaties of the United

ORDER - 3

States[.]" 28 U.S.C. § 2241(c). The petitioner bears the burden of proof by a preponderance of the evidence. *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

**B.     Procedural Due Process and the *Mathews* Test**

Due process protections extend to all persons within the United States, including noncitizens, regardless of immigration status. *Zadvydas*, 533 U.S. at 693. Procedural due process requires meaningful notice and a genuine opportunity to be heard before the federal Government infringes a protected liberty interest. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1972). In immigration detention cases, courts in this Circuit apply the *Mathews* balancing test, weighing: (1) the private interest affected; (2) the risk of erroneous deprivation under existing procedures and the value of additional safeguards; and (3) the government's countervailing interest, including fiscal and administrative burdens. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206-07 (9th Cir. 2022); *see E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321 n.4 (W.D. Wash. 2025) (collecting cases); *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1135 (W.D. Wash. 2025).

**C.     Injunctive Relief**

The federal courts have "long recognized the existence of an implied cause of action through which plaintiffs may seek equitable relief to remedy a constitutional violation." *Roman v. Wolf*, 977 F.3d 935, 941 (9th Cir. 2020). A party "seeking a permanent injunction must demonstrate (1) that he has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2008). A permanent injunction requires a "cognizable danger of recurrent violation," not just a past violation. *Cummings v. Connell*, 316 F.3d 886, 897

ORDER - 4

(9th Cir. 2003); *see also Torres v. Hermosillo*, 2026 WL 145715, at \*8 (W.D. Wash. Jan. 20, 2026).

### III.   DISCUSSION

Petitioner cites the *Mathews* framework in his petition and asserts that other courts in this District have applied *Mathews* and granted the release of noncitizens detained under similar circumstances. (Dkt. # 7, ¶¶ 40-42.) Respondents do not expressly acknowledge *Mathews* or apply the framework in their return memorandum, but merely disagree with Petitioner's assertion that he has any liberty interest as a result of his pending VAWA application. (Dkt. # 10 at 5-6.) Respondents also contend Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b). (*Id.* at 4.) The Court finds *Mathews* to be the appropriate framework to apply to Petitioner's claim that his arrest and detention without adequate process violates his due process rights under the Fifth Amendment. For the following reasons, *Mathews* compels his release.

### A.   General *Mathews* Analysis

#### 1.  Private Interest

Having spent the last two decades living in the United States, Petitioner has a liberty interest in remaining free from immigration detention. Freedom from physical confinement is among the most fundamental liberty interests, and noncitizens are entitled to due process in its deprivation. *See Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *Zadvydas*, 533 U.S. at 690-96. While the parties here disagree on whether Petitioner has a liberty interest from his VAWA case classification or his advance parole and work authorization documents (*see* dkt. ## 7 at 9, 10 at 5-6, 14 at 2), resolving that disagreement is unnecessary under Petitioner's circumstances. It is undisputed that Petitioner has lived and worked in the United States for over two decades.

ORDER - 5

"[Noncitizens] who have established connections in this country have due process rights in deportation proceedings[.]" *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020).

While living in the United States, he and his partner raised several children. (Dkt. # 7, ¶ 24.) The State of Oregon authorized him to take care of his special needs granddaughter. (*Id.* ¶ 25.) And USCIS approved him to travel to and from, and work in, the United States. (*Id.* ¶ 27.) These actions demonstrate that Petitioner gained a foothold in the United States and developed ties to the country, entitling him to a right of due process. *Kaplan v. Tod*, 267 U.S. 228, 230 (1925); *Landon v. Plasencia*, 459 U.S. 21, 32-33 (1982).

Accordingly, the first *Mathews* factor favors Petitioner.

### 2.   Risk of Erroneous Deprivation and Value of Safeguards

The risk of erroneous deprivation weighs in favor of Petitioner where, as here, the only articulated basis for his detention after having lived in the United States for a significant amount of time is Respondents' application of § 1225(b) and a vague reference to Petitioner's criminal history. Petitioner asserts that his arrest and detention are unlawful, particularly in light of his pending VAWA application and USCIS-issued travel and work authorization documents. (Dkt. # 7, ¶¶ 35-44.) Petitioner also argues that Respondents failed to comply with INA regulations that require immigration officers to individually assess a noncitizen's flight risk before making a warrantless arrest. (*Id.* ¶¶ 45-48.)

Because Respondents do not apply the *Mathews* factors, they do not discuss the risk of erroneous deprivation. (*See generally* dkt. # 10.) Rather, Respondents justify Petitioner's arrest based on his criminal history and argue he is mandatorily detained under 8 U.S.C. § 1225(b). (*See id.* at 3-4; Soraghan Decl., ¶ 11.) Respondents do not respond to Petitioner's assertion that his warrantless arrest was improper under the INA or contend that they made an individualized

ORDER - 6

assessment of Petitioner's risk of flight. Nor do Respondents contend that they provided Petitioner with notice or an opportunity to be heard regarding the basis for his arrest before detaining him.

Turning to Petitioner's criminal history, and whether that motivated his arrest, Respondents make nothing more than a passing reference to Petitioner's arrest in their return memorandum. (*See* dkt. # 10 at 2.) While Officer Soraghan states that ICE arrested Petitioner based on his criminal history (*see* Soraghan Decl., ¶ 11), the Court observes that Petitioner's convictions are from 2001 and 2005. (*See id.* ¶ 5.) Presumably, USCIS was aware of these convictions when it considered, and ultimately granted, Petitioner's employment authorization and advance parole requests in 2024. Respondents do not acknowledge the age of Petitioner's convictions, discuss Petitioner's advance parole or work authorization, or explain why Petitioner's two-decades-old convictions were considered so exigent that providing effectively no process before arresting him was necessary. (*See generally* dkt. # 10.)

As for Respondents' argument that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b), the Court remains unpersuaded. *See Corado v. Bondi*, 2026 WL 1113386, at *3 (W.D. Wash. April 24, 2026). The initiation of removal proceedings is not, standing alone, a sufficient basis for detention. Further, Courts in this District routinely reject the argument that noncitizens under circumstances similar to Petitioner's here are "applicants for admission" who are "seeking admission" and therefore subject to detention under § 1225(b). *See, e.g., Rodriguez*, 802 F. Supp. 3d at 1304 n.3 (collecting cases). Regardless, Petitioner here does not challenge Respondents' statutory classification of his detention—he claims that the Fifth Amendment entitled him to some amount of process before ICE arrested and detained him. (Dkt. # 7 at 10.) His claim, therefore, is constitutional, not statutory. *See P.T. v. Hermosillo*, 2025 WL 3294988,

ORDER - 7

at *2 n.1 (W.D. Wash. Nov. 26, 2025) ("To the extent that the Government's briefing suggests that [§] 1225(b) should be the beginning and end of the Court's inquiry, this position is emphatically rejected."); *Francois v. Wamsley*, 2025 WL 3063251, at *3 (W.D. Wash. Nov. 3, 2025) ("Any argument that ICE acted within its authority has no [effect] on a claim contending that detention violates Constitutional Due Process.") Accordingly, Respondents' argument that §1225(b) standing alone justifies Petitioner's arrest and continued detention, or otherwise comports with due process, is unavailing.

Finally, Respondents do not acknowledge or respond to Petitioner's claim that INA regulations required ICE to make certain findings prior to arresting him without a warrant. (*See generally* dkt. # 10.) And while the record reflects that ICE ultimately did serve Petitioner with a warrant for his arrest, the Court observes that service occurred *after* he was arrested. (Soraghan Decl., ¶ 11.) The risk of erroneous deprivation is significant where the Government disregards or fails to follow its own procedures. *Dieng v. Hermosillo*, 2026 WL 411857, at *8 (W.D. Wash. Feb. 13, 2026) (internal citations omitted).

In sum, the procedures used to arrest and detain Petitioner, and the circumstances under which they arose, created a high risk of erroneous deprivation of his liberty interest and there is probable value in additional safeguards. Providing notice and an opportunity for Petitioner to challenge the factual basis for his detention may have decreased the risk of arbitrary or otherwise unlawful detention. The second *Mathews* factor weighs in Petitioner's favor.

### 3. Government's Interest

While the Government has a legitimate and substantial interest in enforcing immigration laws, there is no reason to believe that providing Petitioner with pre-deprivation notice and process would have undermined those interests. Custody and bond hearings already occur

ORDER - 8

regularly within the existing immigration system, and courts have repeatedly found the incremental administrative burden modest relative to the risk and consequences of erroneous detention. *See, e.g.*, *E.A. T.-B.*, 795 F. Supp. 3d at 1324; *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); *Alfonso v. Bondi*, 2026 WL 395326, at *6-7 (W.D. Wash. Feb. 12, 2026). Respondents do not argue Petitioner posed a flight risk, was a danger to the community, or otherwise required immediate detention. (*See generally* dkt. # 10.) While Officer Soraghan states that ICE arrested Petitioner because of his criminal history (Soraghan Decl., ¶ 11), Respondents do not provide additional context. Respondents do not suggest, for example, that a particular conviction *required* Petitioner's detention. *See* 8 U.S.C. § 1226(c) (mandating detention of noncitizens charged with, arrested for, convicted of, or who admit to committing, certain offenses). The Notice of Custody Determination form served on Petitioner after his arrest offers no explanation beyond the deportation officer's decision that Petitioner would remain detained pending a final decision in his immigration case. (*See* Lambert Decl., ¶ 2, Ex. D.) The limited record makes it difficult to ascertain what it was about Petitioner's criminal history or circumstances that required ICE to effectuate Petitioner's arrest in the manner that it did and why it requires his ongoing detention.

Any governmental interest beyond general immigration enforcement, and whether Petitioner's individualized circumstances posed a risk to that interest, is not articulated by Respondents, nor immediately apparent from the record. Accordingly, there is no reason to believe that providing Petitioner with notice and an opportunity to be heard prior to arresting and detaining him would have undermined any potential governmental interest. The third *Mathews* factor therefore favors Petitioner.

ORDER - 9

In sum, all three *Mathews* factors favor Petitioner. Habeas relief is therefore warranted. Given the lack of lawful process at the outset of detention and the absence of exigent circumstances, release is the appropriate and constitutionally required remedy. This conclusion aligns with a broad consensus among district courts. *See*, *e.g.*, *Rojas v. Almodovar*, 2025 WL 3034183, at *8 (S.D.N.Y. Oct. 30, 2025) (holding that where "detention was invalid at its inception[,]" petitioner is "entitled to release."); *E.A. T.-B.*, 795 F. Supp. 3d at 1324; *J.Y.L.C. v. Bostock*, 2025 WL 3169865, at *2 (D. Or. Nov. 12, 2025); *Zhu v. Genalo*, 798 F. Supp. 3d 400, 415 (S.D.N.Y. 2025).

Respondents argue that, should this Court find that Petitioner is detained under § 1226(a), the only applicable relief would be a bond hearing, as he meets the definition of a Bond Denial Class member certified in *Rodriguez*. (*See* dkt. # 10 at 4.) In *Rodriguez*, the petitioners specifically challenged their detentions under 8 U.S.C. § 1225(b), and the Tacoma Immigration Court's practice of denying bond to class members, as unlawful. *Rodriguez*, 802 F. Supp. 3d at 1304. Here, by contrast, Petitioner's primary claim (and the Court's basis for granting relief) is that due process entitled him to pre-deprivation process under the Fifth Amendment prior to being detained by ICE. Petitioner does not challenge his detention under a particular statute or argue he is being unlawfully held under § 1225(b). (*See generally* dkt. # 7.) Therefore, there has been limited factual development in the context of Petitioner's detention authority. Accordingly, the Court does not find *Rodriguez* operates to limit available relief to Petitioner, notwithstanding the parties' agreement that he technically falls within the class defined therein.

**B.    Remaining Claims**

Petitioner also challenges his arrest and detention under the INA, the APA, the Fourth Amendment, ICE's policy directive, and the *Accardi* Doctrine. (Dkt. # 7, ¶¶ 70-82.) Because the

ORDER - 10

relief requested under those claims is duplicative of the relief ordered under *Mathews* above (i.e., Petitioner's release from immigration detention), the Court need not reach those claims.

### C.      Injunctive Relief

Finally, Petitioner seek permanent injunctive relief prohibiting his redetention in the future "absent written notice and a hearing prior to re-detention where [the Government] must prove by clear and convincing evidence that he is a flight risk or danger to the community and that no alternatives to detention would mitigate those risks." (Dkt. # 7 at 20.) Respondents assert that Petitioner has failed to show his future re-detention is sufficiently likely or so imminent that he faces the risk of irreparable injury absent a court order. (Dkt. # 10 at 11.)

Petitioner does not meaningfully engage with the *eBay* factors or otherwise show a risk of irreparable harm absent a court order. (*See generally* dkt. # 7.) While the record establishes that Petitioner was detained without constitutionally adequate process, it does not show a specific, real, and immediate threat that he will again be redetained without due process. Accordingly, Petitioner's request for permanent injunctive relief is denied without prejudice.

### IV.      CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

(1)      The amended petition for writ of habeas corpus (dkt. # 7) is GRANTED in part;

(2)      Respondents shall release Petitioner from immigration detention within **twenty-four (24) hours** of this Order, subject to appropriate conditions of supervision consistent with applicable statutory and regulatory authority.

(3)      Respondents shall file a certification, no later than **two (2) business days** from the date of this Order, confirming that Petitioner has been released.

(4)      Petitioner's remaining claims are moot.

ORDER - 11

(5)    Petitioner's request for permanent injunctive relief is DENIED.

(6)    The Court will entertain any post-judgment motion for attorney's fees, as requested in the petition. Any fee petition must be filed within the deadline set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

Dated this 21st day of May, 2026.

MICHELLE L. PETERSON
United States Magistrate/ Judge

ORDER - 12